UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 23-cr-10299-FDS |
| | ) |
| DEAN A. TRAN, | ) |
| | ) |
| Defendant | ) |
| | ) |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO ARREST JUDGMENT**

The United States of America, by and through the undersigned assistant United States Attorneys, hereby opposes the motion and accompanying memo filed by defendant Dean A. TRAN requesting an arrest of judgment under Rule 34 of the Federal Rules of Criminal Procedure. ECF Dkt. Nos. 124 (hereinafter, the "Defendant's Motion"), 127 (hereinafter, the "Defendant's Memo"). A decision arresting a judgment of conviction must be "grounded upon the District Court's want of jurisdiction or upon any failure of the indictment to charge an offense." *United States v. Nadolillo*, 252 F.2d, 755, 757 (1st Cir. 1958). Contrary to the defendant's assertion, this Court does have jurisdiction over the offenses of conviction. For these reasons set forth below, the Court should deny the Defendant's Motion.

**I.       The Tenth Amendment does not forbid this prosecution.**

The defendant previously raised a Tenth Amendment argument in an earlier Motion to Dismiss. ECF Dkt. No. 22. As was the case then, it is still true that the defendant's various arguments concerning the Tenth Amendment and federalism are wrong and have already been soundly rejected by multiple federal courts.

The wire fraud statute, 18 U.S.C. § 1343, contains an interstate nexus requirement. This sufficiently triggers the Commerce Clause and federalizes the law and its application. The use of

interstate wires is what the statute seeks to protect. *United States v. McLellan*, 959 F.3d 442, 469 (1st Cir. 2020) ("As we have previously found, the structure, elements, and purpose of the wire fraud statute indicate that its focus is not the fraud itself but the abuse of the instrumentality in furtherance of a fraud."); *United States v. Gordon*, 875 F.3d 26, 37 (1st Cir. 2017) ("[I]n enacting the mail and wire fraud statutes, Congress took aim at the means of conducting a substantive offense, not at the substantive offense itself.").

Defendant's Memo reiterates two clear arguments. The first is that the wire fraud statute does not apply when the government is a victim. The Eastern District of Kentucky has previously rejected this argument. *See generally United States v. Morris*, 572 F. Supp. 3d 323 (E.D. Ky. 2021). In *Morris*, the defendant argue that the wire fraud was unconstitutionally applied because he only defrauded the Kentucky Department of Revenue, meaning that "the victim at issue is a state actor." *Id.* at 339. The court rejected this argument, holding that "the victim of the crime is not the focus of § 1343 or the Commerce Clause" and that the focus instead is the use of interstate wires. *Id.* The Court noted that "[t]he statute does not, by its terms, require that the conduct comprising or underlying the fraudulent scheme itself be an interstate activity. [Defendant's] argument conflates the jurisdictional aspect inherent in the second element—wire use—with the independent first element—the underlying fraudulent scheme." *Id.* The "chief evil targeted by § 1343 is fraudulent interstate wire use, no matter whether the fraud scheme itself is interstate or commercial in character." *Id.* at 340. As in *Morris*, the wire fraud statute is applied here to target the use of interstate wires regardless of who the victim is.

The defendant's second argument is that the application of the wire fraud statute is unconstitutional in this case because the crime is a state crime, not a federal crime. The defendant's characterization of the crime is false. The PUA program was a federal program created by

Congress under the CARES Act. Moreover, as both Jennifer Lavin and Special Agent Christina Rosen testified at trial, the PUA program was funded by federal monies. However, even if the program were entirely intrastate, it would still be constitutional to charge defendant with wire fraud because the use of interstate wires meets the interstate nexus requirement. *See United States v. Tum*, 707 F.3d 68, 73 (1st Cir. 2013) ("The wire-fraud statute's interstate-nexus requirement is purely jurisdictional and not a substantive element of the offense, meaning the government did not have to prove that Tum had reason to think that a communication would cross state lines."); *cf. United States v. Lopez*, 514 U.S. 549, 562 (1995) (holding that the Commerce Clause requires a "nexus to interstate commerce").

## II.    *Silverstein* is constitutional.

Defendant claims that the First Circuit's decision in *Silverstein v. United States*, 377 F.2d 269 (1st Cir. 1967) was unconstitutional. Defendant's Memo cites no law which overrules *Silverstein*, and instead relies on references to the 16th Amendment. Until the First Circuit or the Supreme Court finds *Silverstein* to be unconstitutional, this Court is bound by First Circuit precedent. Furthermore, the charge and corresponding jury instructions are consistent with the law. *See* 26 U.S.C. § 7206(1). Despite the defendant's argument that it must be proven that the government must lose money as the result of false tax returns, section 7206(1) clearly criminalizes false statements made on a tax return regardless of any pecuniary loss to the government. *Id.* There is no reason for this Court to hold that a loss of tax revenue is an essential element for a criminal tax prosecution. This assertion contradicts the plain text of the statute and the existing precedent of this Circuit. Regardless, Revenue Agent Ranahan testified about tax loss for each of 2020, 2021 and 2022 and introduced corresponding summary charts for those tax years.

                          Respectfully submitted,

                          JOSHUA S. LEVY
                        Acting United States Attorney

By:    */s/ John T. Mulcahy*
        John T. Mulcahy
        Dustin Chao
        Assistant U.S. Attorneys

Date:  October 18, 2024

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non- registered participants.

      By:    */s/ John T. Mulcahy*
                  John T. Mulcahy

Date:  October 18, 2024